Good morning, Your Honors. I'm Roman Kesselman, attorney for the petitioner in this case, and we are respectfully asking a reversal of the decision of the Board of Immigration Appeals. Keep your voice up. And I would like to reserve two minutes for a rebuttal at the conclusion of my presentation. And we're seeking asylum, misholding, and relief under the Convention Against Torture. But the two main arguments today is whether the Board was correct to deny the claim under a social group analysis in this case. And I'd like to start out by going into those details. So, there's a family relationship in this case where the small family, it's a single mother with five children. And the mother initiates various complaints against a government official, lists other government officials in her complaints, goes on to address the mass media and the prime minister of the country, the prosecutor general. And for that, the persecutor does not target her directly. He goes after the children. And there are four specific instances of brutal attacks on her children, one after another, as well as repeated threats over a period of years. And it's difficult to make an argument about something that's not addressed by the immigration judge in any way, or the Board for that matter, that simply... Mr. Kesselman, I'm wondering if I've got the right case here. The BIA dismissed the appeal from the IJ's ruling, I thought, because it found no evidence of past persecution. You're talking about a particular social group, that if there's no past persecution, he's not entitled to a presumption of future persecution. And if there's no reasonable grounds to believe he'll be persecuted in the future, he's not eligible for asylum as a refugee. Would you address that? Well, first of all, BIA is clearly erroneous and very much mistaken on that issue. This case was never presented as a past persecution case. This case was always presented as a well-founded fear of future persecution case, based on attacks against the family members in the native country, and of the petitioner. And it's a well-founded fear of future harm, because after he came to the United States... But if there's a finding that the family wasn't persecuted... In other words, that their troubles didn't rise to the level of persecution, that theory doesn't fly, does it? I don't believe the board found that, Your Honor. I believe the board dismissed the appeal because they didn't believe that we met the threshold for political opinion, persecution based on political opinion, and because we didn't satisfy the elements of a social group analysis. Well, they didn't really even address the elements of a social group. That's right. They dismissed it in one sentence. Right. They said, the immigration judge found no reasonable chance that the respondent would be harmed for any reason upon his return to Kyrgyzstan. Because we conclude that this finding is not clearly erroneous. We construe this finding as effectively denying the respondent's applications for asylum and withholding a removal on account of membership in a particular social group, namely his family. But if you go to the ALJ's opinion, that first statement about, for any reason, it just doesn't... You can't find that in the ALJ's decision, as I... Right. Well, that's... There's no... I don't know where they get this from. That's the problem. The judge didn't address the social group analysis. The IA dismissed it in one sentence. The case was... But the IA did talk about threats made to him and to his family. He mentioned that one brother initially was beat up and confronted because of the complaints that were filed. Another brother was attacked. But that wasn't sufficient to show that the family was persecuted and that future persecution would occur. Well, I'm not reading the board's decision that way, respectfully, Your Honor. I think the board's decision is very clear, that they were not satisfied with our political opinion analysis. And... Right. You also... Yeah. You claimed as a basis for asylum that Ekiev's family was... Suffered political persecution. Right. Correct. Because they were complaining against... What was his name? Zamir? Is that his name? Zamir? Right. That's the first name. And... I can't pronounce his... Raskulov? Raskulov? Right. I can't pronounce it. My pronunciation... He was the fellow who was building the store in front of their long-standing store. Right? Yes. And he apparently was a government official in some town up the road, but he had connections to other governmental officials. And apparently they claimed that he was using his influence to bypass all the requirements to build his store. And they were complaining about him, and therefore that's, as I understand it, the basis that he was using his political influence to get his way. And they were complaining about that, and that is the basis for political... For their political claim. But the IJ said, well, no, this is just a dispute between two businesses. It's not political. Well, let me address all of these issues. First of all, again, the immigration judge specifically found my client credible as to all matters. And then in the presentation and various documents, there's some medical documents, testimonies, there are listed at least four physical attacks against my client's siblings in his native addressing them to the mass media and to the government. So I don't read the board's decision as specifically finding that family is not suffering persecution. They just decided it doesn't meet the threshold for either political opinion or the social group status for the petitioner. Now, interesting fact is both the judge and the government somewhat tried to minimize or mischaracterize who we're dealing with. This isn't just a police official in a neighboring town. This is the head of the Department of Licensing in the capital city of the country, a city that's larger than Seattle or San Francisco for that matter. You don't become the head of that department by just being a regular police officer. He's a high-ranking police official. He is supported by a prosecutor, a regional prosecutor. His son is also a regional prosecutor. And this is a group of people that the mother of my client... And so the only thing I could... I'm not sure what you're saying is relevant or my question is relevant, but I'm just trying to figure out what his position was. I was trying to figure that out and I found someplace that he was no longer in that position when he started constructing the business. So there is an article that was submitted in support of my client's case that talked about that government official fighting for the same position with another police officer. But what the article is saying that that dispute was unresolved back in 2012. And we submitted it simply as proof that that person in fact exists and in fact he holds a position of power in the country. Now the court, the immigration judge, accepted my client's testimony as true. And in that testimony we clarified that that person is in fact still in that position. He was able to regain that post. So he didn't have it and now he regained it. Well, he had it. There was a dispute after some turbulence in the country and then he regained it. But basically the IJ found that this was a business dispute between two business owners and one had more political influence than the other. That was sort of the bottom line. And then the key Ninth Circuit case, and I can't remember the name of it, was where someone very powerful in the entire state was getting bribes from businesses to, in order to stay in business. One business didn't want to give him a bribe and so he was arrested and in order to get out he had to pay a certain amount of money to the government and that amount of money ended up being the same as the bribe was. I can't remember the name of the case, but basically that seems to be the seminal Ninth Circuit case that says you can have that kind of political, you can have that kind of influence as a politician. I couldn't find anything in this record to show that this man was taking, trying to get bribes from a lot of businesses or anything. He had a dispute with the family that had the grocery store, sundry store, and he was building a store in front of it. Well, why our case is more compelling is precisely because it doesn't involve that official taking bribes. It involves that official abusing his power and using his position to declare... Right, and he ignored them. He chased away some of the government inspectors and he declared that in that region the law will be what I say it is. He is acting with complete impunity and with the understanding that he's backed up by regional prosecutors and by other police officials. So this is the gist of our argument why this is political because they complained about the abuse of power. They complained about his connections to other government officials, which is complaining about corruption. And the retaliation came in response to these complaints. And he wasn't asking the family to pay bribes. He wasn't actually asking them to move their store out of the way or close it down. They were telling them, shut your mouth, basically. Stop making noise. Stop engaging in these actions. That's the essential difference between bribery and extortion cases in this case because it's not just a dispute between competing business owners. He wants them to stop complaining and politicizing what he is doing. I'll let you go over your time, but thank you. I'll give you a minute for rebuttal. Let's hear from the government. Good morning, honors. May it please the court, Alexander Lutz for the government. Your Honor, Judge Black's questions to opposing counsel near the end of his presentation really zeroed in on the heart of this case. The immigration judge found in this case that the harm Mr. Akyev or the threat that he suffered in the past and the harm he feared suffering in the future from Mr. Raskulov was just unrelated to a political opinion or membership in any particular social group. The immigration judge said at pages 56 and 57, this is a dispute among two property owners. This is clearly a private action on Mr. Raskulov's part. The government is unrelated to this difficulty. The record does not compel reversal of that finding and that knocks out all the other issues in this case with respect to Mr. Akyev's application for asylum and withholding. Could you point out to me in the ALJ's decision where he discusses the social group basis for the claim? Your Honor, I don't think he discusses the cognizability of the particular social group itself. I think what he says instead, and this disposes of the particular social group claim, is we can tell from this record what Mr. Raskulov's motive was or would be. And because we can tell that, because it's a dispute between grocery store owners and Mr. Raskulov's desire to retaliate against complaints that are slowing down his process of building that store, because we know that's the motive, the motive isn't political opinion or membership in a particular social group. He did make a claim for asylum based on a particular social group, his family. Correct, Your Honor. He did. And we have said, our case law is pretty clear, that when a petitioner makes a claim, the agency has to address it. I think they did address it here, Your Honor. And I, you know, as I read the ALJ's decision, it's just, it's not there. And second, when I read the BIA's decision, they're pretty clear too, we construe this finding as effectively denying. I mean, our case law generally says when the BIA does, when the agency does not address a claim that the petitioner raises, you know, it goes back. So they can do that. Well, respectfully, Your Honor, I'd point out that this court has also held that the agency doesn't need to specifically take apart each and every particular claim. They just have to render an opinion that addresses it. And here, the immigration judge rendered a finding that disposed of the argument that Your Honor is talking about. The immigration judge says at page 56. Hold on. So page 56. Sure, Your Honor. Of the record or of? Of the record, Your Honor. Okay. The page number is in the bottom right corner. All right. All right. I got it. Okay. So there's a paragraph that starts near the top of that page that begins, for asylum. For asylum. Right. We're at the same place. The claim must relate to one of the enumerated bases, and it appears that the construction of this property is completely unrelated. This is a dispute among two property owners in which one is using his influence as money at the detriment of a lesser individual. Now, I'm skipping to the start of the next sentence. There's no indication other than the possible consent that was required that there was necessarily any construction defect in the constructing of this property. And if we step down to the middle of that paragraph, there's a sentence that reads, so it appears this is a clearly private action on his part, and this activity can't be condoned. And then he goes on further in the context of cat protection, which is on the next page, to say — Well, cat protection started two sentences above that, a review of the claim under the Torture Convention, didn't it, if — Your Honor, I think that's on page 57. So I think you've anticipated where I'm going, but up until now we may have been looking at different pages. I was looking at 56 just then. But turning to the point that Your Honor raises, he says, in the context of the cat claim, he says, does not indicate that the official capacity of the owner of the store is involved. There is no indicate that the problem would escalate if the respondent were to return. You have sorted through the findings and have made a compelling case, but the basic problem that I see or concern is that the judge is talking about the beginning about political asylum, and he says, this is two business people and one has more influence. I got that. Then the judge goes to the cat claim, talks about that, and never mentions at any time social group or family. Now you can take language from both of those, put it together, and says, this addresses the social group argument, but I can't find a place where the — where the I.J. ever again alludes to social group. Your Honor, I think that's right. I think in his recitation of the facts of the claim, he made a fulsome analysis, and I think that the findings he rendered disposed of that. Because Your Honor, whether the group is cognizable and whether there's a nexus to Mr. Akiev's membership in the group are two different and equally dispositive issues. And if the immigration judge on that second issue says, we know what Mr. Raskolov's motive would be, and when we're talking about nexus, the only question is motive. We know what Mr. Raskolov's motive would be. We know it would not be to harm Mr. Akiev on account of or because of a protected ground. That disposes of the particular social group issue. In other words, I agree with Your Honors that the immigration judge could have discussed this more, but I would not agree that that's a basis for remand because the immigration judge rendered a fully defensible finding supported by substantial evidence that moots out that issue. Well, as I understand the social group family claim, it's that there was a member of this family, operated this business, they worked together. There was attacks on members of the family because they were members of the family. So I understand the claim. See, the problem is that that's not analyzed either by the IJ or by the BIA. And as I said before, I keep saying this, but we have made it clear that when a petitioner raises a claim like this, the agency has to address it. And I just fail to see here where that claim is. It's treated as a political opinion case, and you may be right, the board may be right, and may be on the merits, this family, this guy's going to lose, but the agency still needs to address it. Well, Your Honor, again, our position is that the agency did address it by rendering a finding that disposes of it. And I see that that's not persuading, Your Honor, of our position here, but I would just point out that even, there would be no purpose in a remand here because the finding that the immigration judge rendered and that the board adopted, which says we know what the claim is, is not a nexus to a protected ground. We know that Mr. Ryskulov is motivated by this personal dispute and these complaints, not by his membership in a group, not by a political opinion. That does dispose of this claim. There's a presumption that the immigration judge considers the claims and the evidence that are in record. The immigration judge gave a long recitation of the facts here. And there would have been no purpose in further treading into these waters because the finding the immigration judge rendered as to Mr. Ryskulov's motive fully disposes of this family claim. That's the point we made in our brief with respect to the matter of L.A.A. The question when it comes to nexus is purely one of motive. Why would Mr. Ryskulov harm Mr. Akiev? Why did he threaten him in the past? And if we know what that motive is to the exclusion of all other motives, and that's the finding the immigration judge rendered in this case, then there's no purpose in further treading into the case. It doesn't have to be the motive. It has to be the central motive. There could be other motives. It just has to be the central motive. Well, I think that's true, Your Honor, in a mixed motive case. In other words, there's some cases — Couldn't there be mixed motive here? The immigration judge didn't find that, Your Honor. Well, what's the whole point? Well, Your Honor, I think that that may be a different question from what Your Honor was asking about a moment ago. I think a minute ago Your Honor was asking whether the agency needed to further delve into the family claim. And our response is no, because the finding they rendered, as supported by substantial evidence, this record disposes of that. But separately, there's a question of whether this is a mixed motive case or an either-or case. I think that's where we're headed now. And, Your Honor, there certainly are claims where an attacker or persecutor can have more than one motive, and the immigration judge is called upon to sift through them and find out which one is central. But this isn't that case. Here the immigration judge said, we know from the evidence in this record that this was the attacker's motive. His motive was to retaliate against Mr. Accio's family because they were slowing him down in building this grocery store, because they were making complaints that required him to pay out further bribes, to try to get people on his side. This isn't a case where there are multiple possible motives. The immigration judge would have had to make a finding about that and then proceed to analyze it. But here the facts didn't call out for that analysis. We can tell what the persecutor's motive was. And, Your Honors, if I could just make one final point with the time that remains to me, I'd turn to another question Judge Black asked a moment ago, which was about the political opinion angle in this case. That case that Your Honor was searching for was Bagdasarian. In this Court's whistleblowing line of cases, we see complaints about a government and retaliation from a government. That's a consistent thread through Grava, Fiduniak, and Bagdasarian. But here all we see is complaints to a government about private action and then private retaliation. There's no evidence connecting Mr. Raskulov's post. He didn't use his public resources to engage in this dispute. There's no evidence connecting whatever official capacity. But what do you make of his statement that, you know, the law is as I say it is, or some words to that effect? He did say the law in Sukulik will be as I say it will be. But, Your Honor, that was in the context of this dispute about the grocery store. He said that right after Mr. Akiev said, please stop building this grocery store. So it's in context, that's a much narrower statement than it sounds like when one takes it out of context. But there's no interpretation of that statement that comes anywhere close to the fact patterns in Bagdasarian and Fiduniak, where officials in their official capacity Well, he was upset that they were complaining about his building of the store in front of their store. That's true, Your Honor. But Without the required permits. That's true, Your Honor. But that doesn't mean that he used his official capacity to engage in this dispute with Mr. Akiev. In Bagdasarian, the court said that one of the keys to that case was that the attacker, quote, used the resources of his office to retaliate. Or in Fiduniak, the victim complained to a mayor and a chief of police who personally threatened the victim because of those complaints. Here, to the contrary, what we see is that when Mr. Akiev complained to the government about Raskulov's misconduct, the government sent out investigators. They issued an opinion that this building was out of code and ordered that it be stopped. We have evidence that Mr. Raskulov may have retaliated by sending criminals, but he didn't send the police or tax inspectors or criminal investigators. If there are no further questions from the panel, Your Honor, we respectfully request that the court deny the petition for review. Okay. Thank you, Your Honors. You have one minute for rebuttal. Your Honors, very, very briefly, and just to address Judge B's confusion, I am just as confused with this board's decision, which, in fact, did not address I wasn't confused with the board's decision. I was confused with your argument. I apologize for the confusion, but the board's decision doesn't mention past persecution or future persecution. They simply denied it for lack of nexus, which we're disputing. The judge specifically stated that problems arose not from the personal dispute, but after the complaints were filed . . . Counsel, my reading of the board's decision, the immigration judge found no reasonable chance that the respondent would be harmed for any reason upon his return to Kyrgyzstan. That is a finding that he's not going to be persecuted, isn't it? That's the judge's opinion that we're disagreeing with, because under the facts of the case, I'm not sure how you can find that. Certainly, there were several attacks against family members, brutal attacks supported by medical record. I would like to cite the Ria Svy-Lynch case, which is 807, 3rd, 11-23, 2015. This court said that a social group claim should have been addressed when a cousin was murdered and a sister was threatened, stating that a family consequence is an essential social group under any Ninth Circuit analysis. We don't have that in this case, and we respectfully ask this court to grant the petition, or at least remand it for further determination. Thank you, Counsel. We appreciate both arguments. It's a very interesting case and nicely argued. Thank you very much.
judges: Paez, Bea, Black